### 4717. HILLIS *v.* COMER & COMPANY.

1. Where a chattel mortgage is foreclosed by attaching to the affidavit of foreclosure a copy of the mortgage, this copy must be "verified as correct by an affidavit thereon of the owner or his agent or attorney." Such a copy is not sufficiently verified by a certificate signed by the attorney for the mortgagee and by the attesting officer which recites merely: "I hereby certify on oath that the above is a true and correct copy of the original mortgage which is now in my possession." Such a certificate does not show that any oath was administered to the attorney as required by the statute.
2. An instrument in the form of a promissory note for the purchase-price of fertilizer contained the stipulation: "In consideration of interest of payees in my crops, by reason of this fertilizer being furnished to make same, I hereby covenant and agree that all cotton and corn grown during the current season on lands fertilized with this manure shall be held by me in trust for payment of this third note." *Held,* that the language quoted was adequate to create a lien upon the crops mentioned, and the writing was sufficient to operate as a mortgage, if aided by parol evidence identifying the crops.
3. There being no evidence in the present case to identify the mortgaged crops by showing on what land the fertilizer was used, it was error to direct a verdict in favor of the plaintiff.

DECIDED OCTOBER 31, 1913.

Foreclosure of mortgage; from city court of Waynesboro—Judge Davis. January 29, 1913.

*H. A. Boykin, H. J. Fullbright,* for plaintiff in error.
*Brinson & Hatcher,* contra.

RUSSELL, J. This is a case in which it was sought to foreclose a mortgage. An affidavit of illegality was overruled in part, and in part sustained, and a verdict was directed by the court. The mortgage was as follows:

"State of Georgia, Screven County. Millhaven P. O., July 6, 1912.

"$1080.00. On or before October 1st next, I promise to pay to E. T. Comer & Co., or order, one thousand eighty and 00/100 dollars, from first proceeds of sale or picking of my cotton crop of this present year, for 480 sacks Farmers' Pride guano. 1st. Which are hereby guaranteed by payee to standard of analysis branded on each sack, and it is understood that no other or larger warranty is given by the payees. I admit that every sack is branded according to law, and that the inspector's tag is attached thereto. 2nd. If this note is not paid on or before maturity I agree to pay 8 per cent. per annum interest from maturity, and all cost of collection, including ten per cent. attorney's fees. 3rd. I hereby expressly waive and renounce all exemption and homestead rights I may have under the laws of this State or any other State, as against this debt or any renewal thereof. 4th. In consideration of interest of payees in my crops, by reason of this fertilizer being furnished to make same, I hereby covenant and agree that all cotton and corn grown during the current season on lands fertilized with this manure shall be held by me in trust for payment of this third note.

"Witness my hand and seal the day and year above written.

R. J. Hillis

"Signed, sealed, and delivered in the presence of:

J. T. Arvet, N. P., B. C., Ga.                    J. W. Comer."

It is verified by the following certificate:

"I hereby certify on oath that the above is a true and correct copy of the original mortgage which is now in my possession. H. C. Hatcher. Signed before: E. C. Blount, Dpty. Clerk Supr. Court, Burke Co., Ga."

The affidavit of foreclosure was not made by H. C. Hatcher, but was by L. J. Kilpatrick as the agent of E. T. Comer & Co. In the affidavit of foreclosure it is averred that the mortgage is attached. By the affidavit of illegality it was sought to raise the

following points: The first ground is that while the affidavit of foreclosure recites that the mortgage is attached, none is attached, and it is recited that what is attached is the mortgage, instead of there being an averment that the paper attached is a true copy of the original mortgage. As to this ground of illegality we will only say that as the court had the papers before it, it is to be assumed that the trial judge could determine the validity of the objection by an inspection of the papers, and ascertain whether what purported to be a mortgage was the original or a copy, and that he did determine this question properly.

The second ground of illegality is that the copy-mortgage attached is not a sworn copy; in other words, that it does not appear that H. C. Hatcher was duly sworn to the certificate, or that he was authorized to make the affidavit that the paper was a true copy of the original mortgage. Section 3286 of the Civil Code permits the affidavit of foreclosure to be annexed either to the original mortgage or to a sworn copy of the original mortgage, but if for any reason a copy is used instead of the original, it is required to be "verified as correct by an affidavit thereon of the owner or his agent or attorney." Even though the trial judge was authorized to infer that Hatcher was the attorney of the foreclosing mortgage-holder, the fact that he was sworn does not appear from the certificate. In the certificate Hatcher states that he certifies "on oath," but the attesting officer does not state that Hatcher was in fact sworn, or that he knew that Hatcher was assuming the obligation of an oath, or that he administered an oath. Nor does it appear, by reading Hatcher's certificate, or by the contents of the certificate being called to the attention of the officer, that the latter knew that Hatcher was certifying on oath. The language used in the certificate would have been as effectual to obligate Hatcher if he were actually sworn as if the phraseology appropriate to an ordinary affidavit had been used. But there is no jurat to the certificate. Instead of there being a statement by the attesting officer that the certificate was sworn to and subscribed before him, it is merely stated that it was signed before him. On this subject see *Green* v. *Rhodes,* 8 *Ga. App.* 301 (68 S. E. 1090). The very fact that an officer authorized to administer an oath certified no more than that the proposed affiant "signed" the statement in question is of itself sufficient to cause a suspicion that for some reason the ad-

ministration of an oath was dispensed with, that the proposed affiant was in fact not sworn, and that for that reason the officer who signed the jurat purposely omitted the usual form to the effect that the person who signed was first sworn. Of course it was not essential that the deputy clerk should have administered a formal oath, but it was his duty to have called the attention of the signer of the sworn certificate to the fact that he was assuming the obligation of an oath. One of the tests for determining whether one who makes an affidavit or other sworn certificate was in fact sworn is a determination of the question whether the affiant could be convicted of falsely swearing. In any trial for perjury or false swearing it is absolutely essential to prove that an oath was administered, before it becomes material to investigate whether the statements alleged to have been false were false or true. Certainly the certificate in the present case, if employed in a criminal prosecution, would not serve even to indicate that Hatcher had sworn. When the officer before whom the writing is signed does not know that the signer proposes to be sworn there is no demonstration of an oath, and the recital as to an oath is not more binding than in a case where the signer himself does not consciously assume the obligation imposed by an oath. Since it does not appear from the record that there was any effort to amend the affidavit verifying the copy-mortgage, we are of the opinion that the court erred in overruling the 2d ground of the affidavit of illegality.

The third ground of the affidavit of illegality presents the contention that the paper which it was sought to foreclose·was not a mortgage, but only a promissory note. This ground was properly overruled, for the ·covenant and agreement that the property described in the paper should be held by the maker "in trust" for its payment is sufficient to create a mortgage lien. The code does not require that any particular form of expression shall be used to create a mortgage. It is evident from the language employed that it was the intention of the maker of the note to create a special lien, operative upon the property described, and the expression used is tantamount to the ordinary term "mortgage." In *Jackson* v. *Carswell*, 34 *Ga.* 279, Jackson gave a note describing land as "advertised by Rollin Stanley, administrator of Benjamin Jackson," and promised to pay certain named persons $500 "out of said land." The Supreme Court held that this instrument contained

3

"all the necessary stipulations to create a mortgage lien." We think the stipulation to "hold property in trust" with which to pay a note is really stronger than simply to say a note is to be paid "out of the land." Another ground of attack upon the mortgage was that the property was not sufficiently described; and we think this ground was properly overruled, under the ruling in *Thomas Furniture Co.* v. *T. & C. Furniture Co.*, 120 *Ga.* 881-2 (48 S. E. 333). See also *Stephens* v. *Tucker,* 55 *Ga.* 543; *Crine* v. *Tifts,* 65 *Ga.* 644; *Duke* v. *Neisler,* 134 *Ga.* 594 (68 S. E. 327, 137 Am. St. R. 250). In case last cited the description did not go as far as that contained in the mortgage now before us, but the Supreme Court held that a mortgage containing, as a description of the property mortgaged, the language, "our crop planted this year and on which said fertilizer is used," was not void for uncertainty. See, also, *Broach* v. *O'Neal,* 94 *Ga.* 478 (20 S. E. 113); *Patterson* v. *Evans,* 91 *Ga.* 799 (18 S. E. 31).

Even if the affidavit of foreclosure is fuller and more complete in its description of the property than the mortgage, the added terms of description could not have resulted in harm to the defendant. In the foreclosure the mortgagee was compelled to stand on the mortgage and be confined to its description, but since the description in the mortgage could properly be supplemented by parol explanation, the inclusion in the affidavit of a description of the land upon which the mortgaged property was grown could not have harmed the defendant. However, since there was no proof that the fertilizer sold by the plaintiff was used in the cultivation of the cotton, the identification of the property only partially described in the mortgage itself was not completed by parol, and it was therefore error to direct a verdict for the plaintiff. It is true that the defendant did not testify that the guano was not placed under the cotton, but there was no testimony whatever that the guano was in fact used in the cultivation of the cotton, and affirmative proof upon this point was essential, under the rulings of the Supreme Court in *Patterson* v. *Evans,* and *Thomas Furniture Co.* v. *T. & C. Co.,* supra, and citations.

The court erred in directing a verdict as to the cotton, because it was not made to appear that the guano was used in the cultivation of the cotton levied upon, and, if it was not so used, the cotton levied upon was not subject to the mortgage. *Judgment reversed.*